[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on September 18, 1993, in Fairfield, Connecticut. There are two children issue of the marriage, twins, Zachary and Samantha, born May 19, 1996. The parties separated in March, 2000. This action was commenced on March 13, 2000. Thereafter, the parties sought counseling and explored the possibility of reconciliation. This was unsuccessful. In April of this year the plaintiff was granted exclusive possession of the premises at 315 Taft Avenue in Bridgeport and orders were entered permitting the defendant to remove certain personal property from the home. Subsequently, in August, further orders were entered providing for custody, visitation and support. The parties are agreed that those orders regarding custody and visitation may continue. Those orders shall be set forth at the conclusion of this memorandum.
The defendant left the family home in April, 2000, upon the request of the plaintiff. The plaintiff discovered charges for numerous telephone calls on their home phone bill to Stamford in February, one call for 15 minutes in duration, another one for 21 minutes and another for ten minutes. (See plaintiff's exhibit A.) These calls were all to a bagel shop in Stamford where an individual described by the defendant as a "friend" worked. The plaintiff subsequently learned that the name of this "friend" was Gizelle. When confronted by the plaintiff, the defendant denied any extramarital affair with Gizelle. It is interesting that the defendant frequented the Roundtree Motel in Norwalk on December 16, 22, 23 and 29 in 2000, January 19 and 26 in 2001, and on February 23, 24, and CT Page 15941-kt March 10. (See defendant's exhibit 12. This was in reality to be a plaintiff's exhibit rather than a defendant's exhibit.) The defendant's explanation for these motel visits was that it was crowded at his sister's home where he was staying and he needed a change.
The plaintiff is 38 years of age, in good health and employed by Pitney Bowes in Shelton. She is a senior buyer who earns $58,600 per year. After taxes, social security and medicare withholding, this amounts to $43,972 or $845.63 per week. Her medical and hospital insurance deduction is $4.76 thus leaving $840.85 as her net income in computing support in accordance with the guidelines.
The plaintiff began working for Pitney Bowes in 1988 and has been in that company's employ since that date. She commenced work there as a receptionist and then rose through the ranks to purchasing coordinator, buyer and senior buyer. In 1997, she obtained her bachelor's degree paid for by Pitney Bowes. She resides with the parties' two children at 315 Taft Avenue in Bridgeport, which the parties purchased in March, 1994.
The defendant is 37 years old and is employed as a groundskeeper by Fairfield University. He earns $38,200 a year ($735 per week) His pay for the last ten weeks at Fairfield University averages approximately $697 per week (see defendant's exhibit 8) and his earnings from his side jobs, according to his testimony, average $38.00 per week. He began his employment with Fairfield University in January, 2001. Prior to that, he had worked for Al's Landscaping, which is where he was working at the time of the marriage. While working for Al's Landscaping, he was laid off during the winter and collected unemployment compensation. He states that he did odd jobs around the house during the winter months. He is a high school graduate having graduated in 1982. He worked in a gasoline station pumping gas and doing minor automobile repairs for six years before he started working at Al's. He has had no post high school education, no computer training and no skills except as a landscaper. However, he presents a very nice appearance and impresses the court that he is capable of more than his present employment. His pay stubs for the period September 2 through October 21, 2001, show close to seven hours of overtime per pay period. Since he was asked to leave the family home, the defendant stayed at his sister's apartment in Stamford. He paid her $400 per month for rental of one room and freedom to use the sitting room and kitchen.
The court does not believe the defendant's testimony regarding side jobs. The plaintiff testified that she still receives calls from his customers asking for his services. She has given his phone number to CT Page 15941-ku these individuals. Evidence of money available beyond earnings at Fairfield University is demonstrated by the defendant's credit card payments. (See defendant's exhibit 12.) For the period January 27 to March 23, 2001, he paid $1,604 on his credit cards. At that time, he was renting from his sister with a rent expense of $93.00 per week rather than his present expense of $173.00. Accepting all the other figures listed under weekly expenses, those expenses total $717 per week without considering payment of indebtedness. His net income reported in his financial affidavit is $573. Paying $1,604 in a two month period would have been impossible without additional income. The child support guidelines indicate a presumptive current support order of $157 plus $11.00 as a child care contribution for a total effective amount of $168. On a voluntary basis, the defendant gave $200 per week to the plaintiff as child support. That was, thereafter, continued by court order on August 20, the defendant to be credited with overpayment if there be any, or be liable for underpayment both retroactive to August 20, dependent upon final orders.
The house of the parties was purchased in March, 1994. The parties paid $105,500. To make the down payment, the plaintiff sold 30 shares of her Pitney Bowes stock and together the parties borrowed $5,000 from the plaintiff's mother. That $5,000 has since been paid back by the parties. Recently, the plaintiff has borrowed $3,500 to have the house painted. She has paid $450 for a water heater, $785 for repairs to the garage and a chimney cap for $300. While he lived at home, the defendant and a friend reroofed the house. There was no evidence of the cost or value of this home improvement. The plaintiff gave an opinion of value of $135,000 based upon the sale of a similar house on Taft Avenue. She also testified that she had had an appraisal for $153,000. The defendant testified that his opinion of value was $170,000 based upon an appraisal. Neither party chose to have appraisers testify. Plaintiff's financial affidavit shows a value of $153,000 with the present balance of the mortgage of $88,465. The defendant's financial affidavit shows a value of $170,000 with the principal value of the mortgage of $95,000 with a value of $37,500 for his half interest and $32,267 for her half interest.
The defendant has testified that he can provide medical insurance for the children without additional cost. His counsel, at the court's request, reported the defendant can obtain declining value life insurance in a face amount of $120,000 for a premium of $25.00 per month.
The defendant has signed a rental agreement for a third floor apartment in Bridgeport for a period of one year. He has stated that he wished to be closer to his children and have a place of his own. The rent is $750 CT Page 15941-kv per month — $350 more than he was paying his sister for one room.
The children are attending private school, St. Ann's School in Bridgeport. The tuition is $506 per month of which each party pays half. The plaintiff wishes the children to continue at that school. The defendant believes that they should attend public school, although he agrees that it is important for the children to continue at St. Ann's.
The plaintiff has assets as reported in her financial affidavit. In that financial affidavit she reports a checking account at Fleet with a "balance varies." This is understandable for an active checking account. Balance in this account as of August 10 was $1,259. In addition, as a part of this account, the plaintiff maintains an account for each of the children under the Uniform Transfers to Minors Act in the amount of $3,500. In addition to the parties' home, the plaintiff has 36 shares of Pitney Bowes' stock valued at $35.00 a share for a value of $1,260, a 401 (k) plan valued at $61,114.45 and a pension valued at
$14,771. Her only liabilities are for debts owed to her parents, $3,500 owed to her father for house painting and $2,000 owed to her mother as partial payment of her attorney's fees. These assets were earned by her over her 13 year employment with Pitney Bowes, during eight years of which she was married to the defendant. They separated in March, 2000, thus living together for six and a half years.
While the defendant claims half of the plaintiff's pension, her 401(k) and Pitney Bowes stock (see paragraph 7 of his Claims for Relief), the court does not find that the defendant is so entitled. He has been content with lawn maintenance during all of his married life. He is quite capable of improving his situation but has not chosen to do so. His assets, not counting his interest in the house, total $3,700 with credit card debt of $2,800.
The court has considered all of the factors of §§ 46b-81, 46b-82,46b-84 and 46b-215b of the General Statutes together with the appropriate case law and the evidence presented by each of the parties. Having considered the foregoing, the court finds as follows:
1. There is the requisite jurisdiction.
 2. The allegations of the complaint are found to be proved and are true.
3. The marriage of the parties has broken down irretrievably. CT Page 15941-kw
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
 1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
 2. There shall be joint legal custody of the two minor children, the plaintiff to have residential custody and the defendant to have reasonable visitation including but not necessarily limited to alternate weekends beginning Friday from 6:00 p.m. through Sunday at 5:00 p.m. The defendant shall have two non-consecutive weeks during the children's summer vacation with at least six weeks notice to the plaintiff. Holidays shall be alternating. Additional visitation will be scheduled upon the plaintiff's consent.
 3. The defendant shall pay child support to the plaintiff in the amount of $200 per week as well as 25 per cent of all uninsured or unreimbursed medical and dental, hospital, psychiatric, psychological, pharmaceutical, optical and orthodontic expenses of the minor children until the children reach the age of eighteen or graduate from high school whichever shall last occur. An immediate order for wage withholding shall enter.
 (Child support, pursuant to the guidelines, provides for a figure of presumptive support of $157 per week plus $21.63 per week for child care expenses for a total of $179.63. The court finds that to apply the guidelines strictly in this case would be inequitable by reason of the defendant's earning capacity at an amount higher than that shown in his financial affidavit of $735 per week. [See Child Support and Arrearage Guidelines Regulations § 46b-215a-3(b)(B).])
 4. The defendant shall pay one-half of the children's tuition so long as they attend a private parochial school. CT Page 15941-kx
 5. The defendant shall provide medical insurance for the minor children so long as it is available to him through his employer at no additional cost to him. Should the defendant subsequently have to pay an additional amount for medical insurance, the parties shall share equally such increased cost.
 6. The defendant shall obtain life insurance in the beginning principal amount of $120,000 naming the children as equal beneficiaries. Such policy shall be a declining balance policy insuring the defendant's unpaid future obligation for support extrapolated to the children's graduation from high school or age eighteen, whichever shall first occur.
7. There shall be no alimony to either party.
 8. The defendant shall quit claim all of his right, title and interest in and to the real property at 315 Taft Avenue, Bridgeport, Connecticut, to the plaintiff on or before January 1, 2002. The plaintiff shall simultaneously deliver to the defendant her promissory note for $30,000 together with a mortgage deed in the customary form to secure said note. The note shall be without interest and shall be due upon the first to occur of the following events: the plaintiff's remarriage, the death of the plaintiff, the date of sale of said property, or five years from the date hereof. The plaintiff shall hold the defendant harmless for all costs of operating and maintaining said property and for all obligations upon the existing first mortgage.
 9. The parties shall share equally the costs of the children's extracurricular activities.
 10. Each party shall claim one (1) child as an exemption for tax purposes.
 11. The plaintiff shall continue to own her pension account, her 401(k), her shares of Pitney Bowes CT Page 15941-ky stock, her Fleet checking account and her Pitney Bowes Credit Union account free of any claim or demand by the defendant.
 12. The defendant shall continue to own his First County Bank checking account free of any claim or demand by the plaintiff.
 13. The defendant shall be allowed to remove his personal property from the marital home, i.e., all tools, stereo and bedroom dresser, at his earliest convenience.
 14. Other than the property listed in paragraph 13 hereof, all other personal property, including any furniture and furnishings, at 315 Taft Avenue, Bridgeport, shall be the property of the plaintiff free of any claim by the defendant.
 15. Such personal property as is in the possession of the defendant shall be his free of any claim by the plaintiff.
 16. The liabilities listed in the plaintiff's financial affidavit shall be wholly hers, and she shall indemnify and hold harmless the defendant from any claim or demand thereon.
 17. The liabilities listed in the defendant's financial affidavit shall be wholly his, and he shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
18. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing.
 EDGAR W. BASSICK, III JUDGE TRIAL REFEREE